# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Kim Soo Min McMillan<br><br>*Defendant(s)* | )<br>)<br>) Case No. 4:20-mj-70534-MAG<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 5, 2020  in the county of  Alameda  in the Northern District of California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. sec. 922(g)(1) | Felon in possession of a firearm<br><br>Maximum penalties: 10 years in prison; 3 years of supervised release following incarceration; $250,000 fine; $100 special assessment; forfeiture. |

This criminal complaint is based on these facts:
See the attached affidavit of DEA Special Agent Andrew Decker.

☑ Continued on the attached sheet.

Approved as to form ____/s/_____
                    AUSA Frank Riebli

Sworn to before me and signed over the telephone pursuant to Rule 4(d) and 4.1.

Date: 5/7/20

City and state: Oakland, CA

FILED
May 07 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

/s/ Andrew Decker
*Complainant's signature*

DEA SA Andrew Decker
*Printed name and title*

*Judge's signature*

Hon. Donna M. Ryu, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Andrew D. Decker, a Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, state:

### INTRODUCTION

1.	I make this affidavit in support of an application under Federal Rules of Criminal Procedure 3 and 4 for a criminal complaint against Kim Soo Min MCMILLAN, for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

### SOURCES OF INFORMATION

2.	This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal laws identified above have occurred.

3.	I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, information provided by reports of other law enforcement officers, information provided by video and photographic evidence, and information provided by records and databases. Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This affidavit also reflects my current understanding of facts relating to this investigation. That understanding may change in the future as the investigation proceeds. My experience and training as a DEA Special Agent and my participation in this investigation form the basis of the opinions and conclusions set forth below.

## AFFIANT BACKGROUND

4. I am "an investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to investigate and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

5. I am presently employed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), San Francisco Divisional Office as a Special Agent ("SA") and have been so employed since July of 2012. I have been assigned to the Oakland Resident Office since November of 2012.

6. In addition to my experience as an agent with the DEA, I was a certified police officer in the State of California for more than seven years and worked as a patrol officer, investigator, and sergeant. As part of my official duties and assignments as a California police officer, I investigated individuals involved in violation of State of California statutes to include, but not limited to: homicide, narcotic sales, sexual assault, and criminal street gang violations. During the aforementioned investigations, I frequently prepared affidavits in support of search and arrest warrants. I have also testified as an expert in Contra Costa Superior Court on numerous occasions regarding a variety of subjects, including: possession of marijuana for sales, possession of methamphetamine for sales, possession of cocaine base for sales, and criminal street gangs.

7. I have conducted hundreds of probable cause arrests during the investigation of individuals involved in violation of municipal, state and federal law. During such investigations, I have conducted interviews of arrested persons, debriefed confidential sources, conducted probable cause searches of cellular phones, executed search warrants to search and seize content within cellular phones and cellular phone records, and prepared investigations for prosecution.

8. I have attended several law enforcement schools and advanced officer trainings to include, but not limited to, 880 hours of California Peace Officer Standards and Training Basic Police Officer training, 550 hours of DEA Basic Agent training, 32 hours of Narcotic Highway Interdiction training, 4 hours of Complex Narcotics training, 4 hours of Marijuana Dispensary Investigation training, 4 hours of OxyContin Investigation training, 4 hours of Pharmaceutical Investigation training, 4 hours of Manufacturing Methamphetamine training, 40 hours of Clandestine Laboratory Investigations, 8 hours of Butane Honey Oil Laboratory Investigations, and 4 hours of Asset Seizure training. I hold a Bachelor of Science degree in Criminal Justice Administration.

9. In connection with my official duties as a Special Agent for the DEA, I investigate criminal violations of the federal narcotics laws including, but not limited to, 21 U.S.C. §§ 841(manufacturing, distributing, possessing with intent to manufacture, distribute or dispense a controlled substance), 843 (registrant dispensing Scheduled I or II substance outside legitimate scope of practice), 846 (attempts and conspiracy to commit aforementioned violations) and 848 (engaging in a continuing criminal enterprise). As a DEA Special Agent, I have assisted in narcotics investigations involving fentanyl, cocaine, heroin, and methamphetamine, which have led to the seizure of narcotics and arrests of individuals on numerous occasions. I have discussed with numerous law enforcement officers, cooperating defendants, and sources, the method and practices used by narcotics distributors.

10. In addition, I am familiar with narcotics traffickers' methods of operation including, the manufacturing, distribution, storage, and transportation of narcotics, and the collection of monies which represents the proceeds of narcotics trafficking, money laundering, and firearms possession and trafficking. I have participated in all formal methods of

investigations, including but not limited to, electronic surveillance, visual surveillance, general questioning of witnesses, search warrants, confidential sources, pen registers, trap and trace, and the use of undercover agents. I have the authority to execute and serve search warrants issued under authority of the United States, pursuant to 21 U.S.C. § 878.

11. I am familiar with the facts and circumstances involved in this investigation as a result of my personal involvement in the investigation described below. I have also communicated with other law enforcement officers involved in the investigation, including officers with the San Francisco Police Department. My analysis of the facts of the case is based in part on conversations, as stated above, with other law enforcement officers, detectives and/or agents who are also familiar with the facts, circumstances, and reports generated from and related to this investigation. Additionally, my analysis is made based on my own training and experience, my direct involvement in the investigation, and my review of records/reports relating thereto, which I believe to be reliable. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer, detective, or agent, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are stated in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

12. On Tuesday, May 5, 2020, at approximately 1:47 a.m., officers with the California Highway Patrol (CHP) were conducting uniformed patrol while traveling south on Interstate 880 in Hayward, California. While driving south on I-880, CHP Officer Bryce Morgan's attention was drawn to a silver Mitsubishi Outlander that was traveling south in front of him. Officer Morgan noticed the vehicle, which was traveling in lane number 5, swerved onto

the right shoulder of the highway then back through lane number 5 into lane number 4, in a manner consistent with a driver who is intoxicated or under the influence, in violation of California Vehicle Code Section 21352.

13. Officer Morgan conducted a traffic enforcement stop and contacted the driver, who later identified himself (with a California driver's license) as Kim MCMILLAN. Officer Morgan noticed that MCMILLAN was displaying objective signs and symptoms of drug influence: MCMILLAN's pupils were dilated, his movements were quick and jerky, he was sweating, and he had visible injection marks on his hands and wrists. Officer Morgan administered several field sobriety tests to MCMILLIAN. Based on MCMILLAN's performance on those tests, Officer Morgan determined that MCMILLAN was under the influence of a controlled substance and arrested MCMILLAN for operating a motor vehicle while under the influence.

14. Officers began to conduct a vehicle inventory search on MCMILLAN's vehicle pursuant to their policy and procedure. During the inventory search, they observed one loaded handgun, a Rock Slide USA 9mm handgun, in a holster laying on the front passenger seat of the vehicle. Officers also located a black storage case that contained an unloaded Sterling .22LR handgun. Officers noticed that this same container had plastic packaging with a white, powder residue upon them. Out of concern for their own safety, the officers asked MCMILLAN if there was any fentanyl in the vehicle. MCMILLAN nodded his head in the affirmative and replied, "Yeah there's fentanyl."

15. Officers sealed the vehicle and had it towed to the CHP Office in Hayward, California. CHP Detective Don Saputa obtained a State of California Search Warrant for the vehicle and requested my assistance in processing the vehicle due to the hazardous nature of the

vehicle containing suspected fentanyl. During my search of the vehicle, I located three boxes of ammunition in the same storage case that contained the Sterling handgun and packaging. Two of the boxes contained 40 rounds of Winchester .223 ammunition each and the third box contained 50 rounds of Winchester 9mm ammunition. I also located a cereal box, on the front passenger seat, that contained four knot-tied plastic bags containing a white, chunky powder. The total weight of this powder, including packaging, was approximately 201.7 grams. I know from my training and experience, including in cases involving powdered fentanyl, that fentanyl is a white powder that is sometimes pressed into bricks for transport, and that when pieces of it are broken off for sale they can appear to be a chunky, white powder. I submitted the suspected fentanyl to the DEA's Western Laboratory for analysis but have not yet received the results.

16.   I conducted a Criminal History Records check of MCMILLAN and noticed he was convicted on or about April 6, 2010 for Burglary and Grand Theft from a Person. That crime was a felony and MCMILLAN was sentenced to 2 years in prison. On or about August 24, 2011, MCMILLAN was convicted again of felony Possession of a Controlled Substance and sentenced to 16 months in prison. On or about November 21, 2013, MCMILLAN was convicted of felony Possession of a Controlled Substance for Sale and sentenced to 2 years in prison. Based on the number of times MCMILLAN has been convicted of felony charges and sentenced to state prison, I believe he was aware on May 5, 2020 that he had previously been convicted of a felony.

17.   I spoke to Alcohol, Tobacco, Firearms and Explosives Special Agent Christopher Bailey about the guns seized in this case. SA Bailey is an interstate nexus expert, which means he is trained to and authorized by ATF to opine on the place of manufacture of firearms and ammunition for purposes of establishing whether those items have moved in interstate commerce

in a particular case. SA Bailey informs me that Winchester ammunition is not manufactured in the State of California. He also informs me that the Sterling .22LR pistol was not manufactured in California. And he said that the 9 mm Luger ammunition in the Rock Slide USA pistol was not manufactured in California. For these reasons, I believe the Sterling pistol and all of the ammunition were transported in interstate commerce.

## CONCLUSION

18. Based on the above, I believe there is probable cause to believe that MCMILLAN knowingly possessed with the intent to distribute controlled substances, in violation of 18 U.S.C. § 922(g)(1).

/s/ Andrew Decker
_____
ANDREW D. DECKER
Special Agent
Drug Enforcement Administration

Subscribed and sworn before me over the telephone pursuant to Rules 4(d) and 4.1 on this __7th__ day of May, 2020.

_____
HON. DONNA M. RYU
United States Magistrate Judge

7