STEVEN G. KALAR
Federal Public Defender
Northern District of California
JOHN PAUL REICHMUTH
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:	(510) 637-3500
Facsimile:	(510) 637-3507
Email:	John_Reichmuth@fd.org

Counsel for Defendant McMillan

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | **Case No.:** CR 20–0281 YGR |
|---|---|
| Plaintiff, | **KIM SOO MIN MCMILLAN'S SENTENCING MEMORANDUM** |
| v. | **Court:**  Courtroom 1, 4th Floor |
| KIM SOO MIN MCMILLAN, | **Hearing Date:** September 24, 2020 |
| Defendant. | **Hearing Time:** 9:00 a.m. |

**I.     INTRODUCTION**

The Sentencing Guidelines do not take into account the pandemic, which has profoundly altered the nature of incarceration by necessitating restricted liberties and dramatically increasing the risk of serious health consequences for sentenced persons.  Mr. McMillan, a trained wildlands firefighter who recently had five years of sobriety, has already experienced this new aspect of incarceration, suffering through a bout of COVID-19 at the Santa Rita Jail.  Because of his important skill, his purely addiction-related criminal history, and his proven history of successful addiction

treatment, Mr. McMillan is not one of the high-risk individuals who must be incapacitated for a lengthy period during this period of international crisis.

Mr. McMillan will plead to a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Both parties agree to a Total Offense Level 15 and a Criminal History Category VI, for a range of 41-51 months imprisonment.  The Probation Officer calculates a Total Offense level of 23 (after acceptance) based on two additional contested adjustments, one for a prior conviction for a controlled substance offense and the other for a stolen gun.[1]  The defense objects to both of these adjustments and the government agrees that it cannot meet its burden as to the application of either.  The government requests a sentence of 48 months imprisonment.  Such a sentence is not necessary, and it places a burden on pandemic-hit facilities and staff to warehouse an addict when the basic goal of this case is to return Mr. McMillan to the state he was in when he accrued five years of sobriety.  The defense thus requests 24 months of prison, with a request that the Bureau of Prisons designate him where he can serve as a firefighter.

---

[1] The parties are correct that these do not apply.  *See U.S. v. Valdavinos-Torres*, 704 F.3d 679, 684 (9th Cir. 2012) ("Not all convictions under Section 11378 qualify as drug trafficking offenses. because, as this Court recognized in *Ruiz–Vidal v. Gonzales,* 473 F.3d 1072 (9th Cir. 2007), not all substances punishable under California law are defined as controlled substances under federal law."); *U.S. v. Pitts*, 338 Fed.Appx. 676 (9th Cir. 2009) (unpublished) (where PSR noted that firearm had been reported stolen and defense objected, enhancement was unproven without further evidence tendered by government at sentencing hearing).  Of note, however, the controlled substances objection was not based, as the Probation Office wrote, on *Lorenzo v. Sessions*, 902 F. 3d 930, (9th Cir. 2018), *opinion superseded on denial of rehearing sub nom. Lorenzo v. Whittaker*, 752 Fed.Appx. 482 (9th Cir. 2019), but based on a lack of judicially noticeable documents before the court as to what drug Mr. McMillan admitted in PSR ¶ 29.  That paragraph states that Mr. McMillan was convicted of Possession of a Controlled Substance for Sale.  *Lorenzo* considered whether, even if methamphetamine were admitted in the plea colloquy, such an admission would establish a violation of the federal Controlled Substances Act, because California law punished more forms of methamphetamine than federal law, including isomers.  There is no dispute, however, that a generic violation of H&S 11378, as stated in ¶29 still requires proof, via a modified categorical analysis, of judicially noticeable facts demonstrating that the violation was for a substance covered by federal law.  *Valdavinos-Torres,* 704 F.3d at 684.

MCMILLAN SENTENCING MEMORANDUM
*MCMILLAN*, CR 20–0281 YGR

## II. FACTS

### A. Mr. McMillan is an addict with a history of treatment success, good skills, a nonviolent character, and very little actual prison experience.

Mr. McMillan is a good person with a bright future. He has excellent family support. His mother is a Registered Nurse and his father is a retired welder. PSR ¶ 39. His mother describes him as 'fantastic, kind, and very smart." PSR ¶ 44. His character is also apparent in his criminal history: There is no allegation that he has ever physically harmed anyone in his life. He accepted responsibility for this case immediately, and it is clear that he has insight into his problem. He knows that he had a relapse after years of success in remaining clean and sober, and that his life became a shambles and he found himself lost in his addiction. PSR ¶ 12.

Since being adopted from Korea at a very young age, and except for his period of sobriety, Mr. McMillan has had difficulties. PSR ¶ 42, 44. He thinks he may have experienced very early trauma, prior to his adoption; perhaps it was just difficult for him to be separated from his mother at 18 months of age. *Id.* Probably as a result of these early experiences, he has had Substance Use Dependency Disorder since the age of 13. PSR ¶ 49.

Early drug use probably corroded his stability and mental health. Though research yields mixed findings, some evidence shows that marijuana use by people under the age of 16 can have noticeable structural and cognitive effects, including those relating to psychotic disorders, IQ, and impulsivity. *See* Kirsten Weir, *Marijuana and the Developing Brain*, Monitor on Psychology (magazine of the American Psychological Association), November 2015, Vol 46, No. 10, page 48 (discussing numerous studies about the effects of marijuana on the developing brain).[2] Mr. McMillan was addicted to multiple substances before he was an adult. It is likely that he has lasting effects from this.

---

[2] Available at (http://www.apa.org/monitor /2015/11/marijuana-brain.aspx).

This substance use led to all of his criminal activity. It is fair to say that every single criminal history point in the PSR is tied to drug use; and some of the incidents are minor. PSR ¶¶ 26-31. He received five Criminal History Points for two simple possession cases. PSR ¶ 27, 31. He received prison for one of them, PSR ¶ 27. Both code sections violated in those cases are now misdemeanors. Cal. H&S §§ 11350, 11377. When one reviews his sentences, it is also clear that he is not institutionalized, and does not resemble a Category VI defendant. His longest sentence is two years, presumably served at 50%. PSR ¶ 29. He was paroled 10 months after receiving a two-year prison sentence in PSR ¶ 26. It does not appear that he has served more than 12 months of continuous custody. He is not accustomed to prison, and his crimes all pertain to addiction.

### III.  ARGUMENT

#### A.  The Sentencing Factors under 18 U.S.C. § 3553(a).

The government's request is unnecessary because Mr. McMillan has a home to return to, a history of treatment success, a high school diploma, and a very in-demand skill, firefighting. *Id.* Under federal law, *every day of incarceration must be necessary*. The court is familiar with the directives of *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at a sentencing determination. The Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6). In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). Simplifying the

calculation in this case is the fact that all of Mr. McMillan's illegal conduct is traceable to chemical dependency. This means, that most of the sentencing factors, including protection of the public, can be fulfilled by sobriety. On the other hand, sentencing Mr. McMillan, whose chief need is treatment, to 48 months of COVID-time, would fail to achieve the sentencing factors while exposing him and his caretakers to harm.

**1. The pandemic calls for a variance.**

Mr. McMillan has already suffered through COVID-19 while in custody on this case. He was infected within 90 days of being incarcerated. The sentence requested by the defense is eight times that period of time. It is unknown whether he has lasting damage or whether he may be re-infected. *See* Centers for Disease Control and Prevention, *Duration of Isolation and Precautions for Adults with COVID-19*, Sept. 10, 2020 (re-evaluate for new infection if patient has recovered and shows new symptoms), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html. Thus, Mr. McMillan may continue to face greater risks of COVID in custody. The COVID-19 infection rate within prison generally, and BOP facilities specifically, far outpaces the infection rate in the United States. A recent research letter in the Journal of the American Medical Association ("JAMA") found the COVID-19 case rate for prisoners of 3,251 per 100,000 prisoners was 5.5 times higher than the U.S. population case rate of 587 per 100,000. Similarly, the adjusted death rate from COVID-19 for inmates was three times higher than would be expected if age and sex distributions of the U.S. and prison population were equal. Saloner, et al., "COVID-19 Cases and Deaths in Federal and State Prisons," JAMA, Jul. 8, 2020, https://jamanetwork.com/journals/jama/fullarticle/2768249. Mr. McMillan's request of a 24-month prison sentence, at a time when people are being released and offered shorter sentences, is reasonable in light of the grave risk to his health that incarceration may still bring, even though he is "recovered." Even under this 24-month proposal, Mr. McMillan may contract COVID-19 several times, and it is not known that these infections will be less severe than his initial one, which was not easy.

Even assuming that Mr. McMillan is immune from re-infection, prison has become, of necessity, intensive confinement. It is routinely reported that programming, visiting, "pod time," and

many of the pro-social opportunities in prison have been curtailed or suspended.  Other district courts have recently cited the harsh prison conditions and lack of programming opportunities due to the coronavirus as reasons to vary downward in imposing sentence.  *See e.g.*, *United States v. William White*, 19-cr-325-RC (D.D.C. Aug. 5, 2020) (referring to more punitive and less rehabilitative conditions at the jail due to COVID-19); *United States v. Antonio Cox*, 19-cr-235-JDB (D.D.C. July 29, 2020) (acknowledging lack of programming due to COVID-19).  The Sentencing Guidelines simply fail to account for these changes or for the new sentences that federal judges have been imposing in response to them.   The prison experience during COVID-19 should be reserved for dangerous individuals who must be separated from society.  Mr. McMillan relapsed and possessed firearms and drugs, but 48 months of COVID-time is not necessary to return him to sobriety.  Given the demonstrably more punitive and dangerous nature of prison during the pandemic, the defense request is more than reasonable for someone who responds very well to treatment.

### 2. Mr. McMillan's treatable drug addiction calls for a variance and alternatives to incarceration.

Mr. McMillan is a drug addict with substance abuse problems dating back to the age of 13.  This fact helps explain Mr. McMillan's crime of possessing guns and drugs, and it also indicates to the court how his antisocial behavior can best be addressed:  treatment.  It is the rare case in which an addict has achieved five years of sobriety and demonstrated how successful treatment is at addressing his particular addiction.  His period of recovery is an example that, as observed by the National Institute on Drug Abuse:

> [l]ike other chronic diseases, addiction can be managed successfully. Treatment enables people to counteract addiction's powerful disruptive effects on the brain and behavior and to regain control of their lives. The chronic nature of the disease means that relapsing to drug abuse is not only possible but also likely, with symptom recurrence rates similar to those for other well-characterized chronic medical illnesses—such as diabetes, hypertension, and asthma (see figure, "Comparison of Relapse Rates Between Drug Addiction and Other Chronic Illnesses")—that also have both physiological and behavioral components.

*How effective is drug addiction treatment?* Principles of Drug Addiction Treatment:  A Research-Based Guide (Third Edition), National Institute on Drug Abuse (hereinafter Principles of Drug

Addiction Treatment).[3] Drug treatment is the number one priority in this case under any sentencing goal included in § 3553(a).

It is true that Mr. McMillan relapsed and brought himself before this Court. Some may answer that "treatment can work in general but it has failed in this case." This argument is based on a more general misconception that relapses indicate that treatment has failed. According to the National Institute on Drug Abuse:

> Unfortunately, when relapse occurs many deem treatment a failure. This is not the case: Successful treatment for addiction typically requires continual evaluation and modification as appropriate, similar to the approach taken for other chronic diseases. For example, when a patient is receiving active treatment for hypertension and symptoms decrease, treatment is deemed successful, even though symptoms may recur when treatment is discontinued. For the addicted individual, lapses to drug abuse do not indicate failure—rather, they signify that treatment needs to be reinstated or adjusted, or that alternate treatment is needed . . . .

*Principles of Drug Addiction Treatment*. The antidote to relapse is continued and tailored treatment. A sentence of 24 months imprisonment would get Mr. McMillan into a rigorous rehabilitative program where he belongs at the earliest opportunity.

The sentence requested by the defense in this case would also be significantly different in kind and degree from any sentence Mr. McMillan has received in the past. It would be about twice as long as his longest previous sentence, given that his longest previous term of two years prison appears to have involved a 12-month actual term of custody, as is typical with state sentences. Any sentence imposed will also include federal supervised release with its vastly more involved oversight than state parole and greater resources in the form of inpatient drug treatment and the possibility of Reentry Court. There are several reasons to believe that Mr. McMillan can be a success if offered these resources. He has a past history of successful drug treatment, a high school diploma and some college experience, a supportive family, a very valuable skill in a high-demand field, and a place to

---

[3] Available at https://www.drugabuse.gov/publications/principles-drug-addiction-treatment-research-based-guide-third-edition/frequently-asked-questions/how-effective-drug-addiction-treatment

live when he releases. The court also has many tools at its disposal, including lengthy incarceration for violations of supervised release. The dictates of section 3553(a) call for alternatives to incarceration if they are likely to fulfill the goals of sentencing. Federal supervised release is likely to fulfill the goals of sentencing in this case as well as or better than prison.

It is known that Mr. McMillan has treatable issues and very recently had five years with no police contacts. The court should give a shorter federal prison term and supervised release a chance to change Mr. McMillan's life and return him to that type of stability before accepting as necessary a lengthy federal sentence during circumstances in which prisons are strained and their residents threatened in an unprecedented way.

### IV.     CONCLUSION

Based on the foregoing, it is respectfully requested that Mr. McMillan be sentenced to two years of imprisonment, followed by three years of supervised release.

Dated:   September 17, 2020            Respectfully submitted,


STEVEN G. KALAR
Federal Public Defender
Northern District of California

            /S
JOHN PAUL REICHMUTH
Assistant Federal Public Defender